| SUCCESSION OF STEVE ANTHONY PILET | * | NO. 2025-CA-0296 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 19-0270, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Karen K. Herman, Judge Monique G. Morial)

**MORIAL, J., DISSENTS AND ASSIGNS REASONS**
**HERMAN, J., DISSENTS FOR THE REASONS ASSIGNED BY JUDGE MORIAL**

Alan G. Bouterie, Jr.
Jordan P. Guillot
BOUTERIE LAW FIRM, APLC
2110 Pakenham Drive
Chalmette, LA 70043

      COUNSEL FOR PLAINTIFF/APPELLANT

Roy K. Burns, Jr.
502 N. New Hampshire Street
Covington, LA 70433

R. Collins Vallee
135 Fontainbleau Dr.
Mandeville, LA 70471

      COUNSEL FOR DEFENDANT/APPELLEE

                                 **AFFIRMED**
                                 **DECEMBER 4, 2025**

This is a succession matter. Appellants, Kathi Pilet McDonald and Dennis Pilet, Sr.,[1] appeal the trial court's November 17, 2024 judgment which denied Appellants' request to reopen the succession of their sibling, Steve Anthony Pilet ("Decedent") after a copy of a 2004 will was found approximately two years after the succession had been probated as intestate. The trial court determined that Appellants failed to rebut the legal presumption that Decedent revoked the 2004 will because the original will was not located. For the reasons that follow, we affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Decedent died on June 1, 2014. He was survived by his wife, Cheryl Cosse Pilet ("Decedent's wife"), with whom he had no children, and four siblings, Kathi Pilet McDonald ("Kathi"), Dennis Pilet, Sr., ("Dennis'), Theodore Pilet ("Teddy"), and Randy Pilet ("Randy") (collectively, the "Siblings.").

On February 20, 2019, Kathi filed a Petition for Appointment of Administratrix. She represented that Decedent had died intestate. However, she

---

[1] In the trial proceedings, Kathi Pilet McDonald, Teddy Pilet, and Randy Pilet petitioned to reopen Decedent's succession. In the present appeal, only Kathi and Dennis appeal the trial court's judgment.

1

attached a document purporting to be Decedent's testament and stated her belief that the document was not a valid testament as it bore no signatures. Kathi was appointed as Administratrix of the succession. Thereafter, Kathi and Decedent's wife filed a Petition for Possession and Discharge of Administratrix on September 13, 2021. The Petition for Possession stated that the only remaining asset of the succession was the community home between Decedent and Decedent's wife. The court granted Kathi's request to be discharged as Administratrix and rendered a Judgment of Possession which recognized Decedent's wife as his surviving spouse and heir and placed her in possession of his undivided interest in the community home (hereinafter, "the Property").

Sometime in late 2022, Tracy Petruccelli ("Attorney Petruccelli"), the attorney who drafted the unsigned 2004 will, found a signed and notarized copy in her attic. In the will, Decedent bequeathed his interest in his business, Pilet Distributing, to his godchild, Shane Raimer ("Mr. Raimer"), and his interest in the Property to the Siblings. Thereafter, Attorney Petruccelli notified Kathi that she had discovered a signed copy of Decedent's will. On or about the same time— January 2023—Decedent's wife donated the Property to Appellee Tara Fezekas King ("Ms. King"), her niece.[2]

On March 14, 2023, Kathi, Teddy, and Randy filed a Petition to Reopen the Succession and execute the copy of the 2004 will.[3] They sought to annul the September 2021 Judgment of Possession, asserted claims against the Property, and requested a partition by licitation. In response, Ms. King filed an exception of no

---

[2] Decedent's wife is now deceased.

[3] In the Petition to Reopen Succession, Dennis was initially named as a defendant. The petition asked the court to compel Dennis to accept or renounce the succession and his purported legacy. As previously referenced, Dennis has since joined in the Petition to Reopen Succession and appears as an appellant in the present matter.

2

right of action and/or alternatively, requested reimbursement for improvements made to the property.

The trial took place on October 9, 2024. The trial court heard testimony from Kathi, Attorney Petruccelli, Dennis, Teddy, Ms. King, and Mr. Raimer.[4] After the trial on the merits, the trial court denied Ms. King's exception of no cause of action; denied the Siblings' petition to reopen the succession, and denied Ms. King's request for reimbursement as moot.

This appeal followed by Appellants.

## ASSIGNMENT OF ERROR

Appellants' sole assignment of error contends the trial court committed manifest error when it denied their request to reopen Decedent's succession based on its finding that Appellants failed to rebut the strong presumption that Decedent revoked his will.

## STANDARD OF REVIEW

"A trial court's determination as to whether the presumption of revocation has been rebutted is reviewed under the manifest error-clearly erroneous standard of review." *Id.* In *Rossell v. ESCO*, the Supreme Court long established the criteria for the manifest error standard of review as follows:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
>
> . . .
>
> The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in

---

[4] Randy did not testify.

the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Arceneaux,* supra at 1333, *Watson v. State Farm Fire & Casualty Ins. Co.,* 469 So.2d 967 (La.1985). In applying the manifestly erroneous—clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues *de novo.*

549 So.2d 840, 844 (La. 1989).

## PRESUMPTION OF REVOCATION

Established Louisiana jurisprudence "has adopted the uniformly adhered to rule that the failure to find a will which was duly executed and in the possession of, or readily accessible to, the testator, gives rise to a legal presumption of revocation by destruction; however, this presumption is a rebuttable one and so may be overcome by sufficient evidence." *Succession of Talbot,* 530 So.2d 1132, 1134-35 (La. 1988). This presumption also applies in cases where a copy exists, but the original will cannot be located. *Id.,* 530 So.2d at 1135 (citation omitted). The presumption shifts the burden of producing evidence to rebut the presumption to the proponent of the will. *Id.* Generally, the presumption of revocation may be rebutted by clear proof (1) that the testator made a valid will; (2) of the contents or substantiality of the will; and (3) that the will was not revoked by the testator. *Succession of Foster,* 2019-0209, p. 4 (La. App. 4 Cir. 7/31/19), 363 So.3d 505, 509.

## DISCUSSION

The trial court found that Appellants met the first two requirements to rebut the presumption of revocation as provided in *Foster,* 2019-2009, p. 4, 363 So.3d at 509. In particular, the court found that the testimony and evidence supported that

4

the copy of the 2004 offered into evidence was a valid testament. However, the court found that Appellants failed to meet the third requirement—"that the will was not revoked by the testator." Appellants counter that the trial court erred in finding that the third requirement was not met. Appellants cite Kathi's testimony that Decedent showed her the 2004 will; she read the will; and Decedent told her he was leaving the Property to the Siblings. Appellants also reference Teddy's and Dennis' testimony that Decedent showed Teddy the 2004 will and told Dennis that he was leaving the Property to his Siblings. Appellants maintain the evidence shows that all the Siblings had a good relationship with Decedent. Additionally, Appellants refer to Attorney Petruccelli's testimony that Decedent desired to leave the Property to his Siblings and her opinion that he would have consulted with her if he had intended to revoke his will. Therefore, Appellants contend they rebutted the presumption of revocation because there was a lack of objective evidence in the record to show Decedent intended to revoke his will. In support this contention, Appellants rely, in part, on *Succession of Middlebrooks*, where the Third Circuit noted that "[a] lack of evidence in the record that the Decedent intended to revoke his will is evidence that he did not intend to revoke it." 2023-236, p. 15 (La. App. 3 Cir. 2/27/24), 381 So.3d 298, 307.

We find the instant matter is distinguishable from *Middlebrooks* in two significant aspects. First, in *Middlebrooks*, the appellate court applied the manifest error standard of review and found that the trial court was not clearly wrong when it found the daughter presented sufficient evidence to rebut the presumption that her father's will had been revoked. 2023-236, p. 16, 381 So.3d at 308. Contrariwise, the trial court herein found the presumption of revocation was strong. The trial court emphasized testimony from Mr. Raimer and Ms. King that

5

Decedent was a smart, organized, well-established businessman who kept milk crates of important documents in his home, yet no original or signed copy of the 2004 will was found at his home. The trial court noted that Appellants suggested that Decedent's will had been destroyed by Hurricane Katrina. However, Ms. King, who evacuated with Decedent during Hurricane Katrina, testified that she saw Decedent had brought milk crates of important papers with him. The trial court reasoned that a smart businessman would have evacuated with his will, pointing out that the milk crates of Decedent's important documents he evacuated with were later observed in Decedent's home.

Notably, the trial court found that Decedent maintained a close relationship with Attorney Petruccelli. The trial court reasoned that Decedent could have easily contacted her to replace or obtain a signed copy of his will, if indeed it had been destroyed by Hurricane Katrina as suggested by Appellants. The trial court opined that his failure to do so was further evidence that Decedent had revoked the will.

Next, in contrast to *Middlebrooks*, *supra*, the trial court also questioned the credibility of certain witnesses. With reference to Appellant Kathi Pilet McDonald, the trial court made the following observations:

> She attested under oath in a legal document filed with the Court in 2019 that she believed it [the 2004 will] was not a valid testament, but merely a draft of a legal document which is in direct contravention to her testimony in Court in 2024 wherein she stated that she saw and read the original executed will in 2004. Therefore, she was aware that there was an executed will and she was aware of its contents. Further, in the Petition to Reopen Succession filed in 2023, the Pilet Heirs allege that no will was found after a diligent search and it was believed that Decedent died intestate; however, Kathi Pilet McDonald testified that she did not search for the will. She simply called Ms. Petruccelli for a copy and that was the extent of her actual search for Decedent's will. This raises a credibility issue for Kathi Pilet McDonald with this Court.

6

Additionally, the trial court found that Appellants' sibling, Teddy, was not a credible witness. Specifically, the trial court noted that Teddy contradicted the testimony of Mr. Raimer, who the court regarded as the most credible witness. These contradictions included Teddy's testimony questioning the closeness between Decedent and Mr. Raimer; the frequency with which Mr. Raimer took Decedent to his hospital appointments; Teddy's disagreement that Decedent loved his wife during the entirety of their marriage; and Teddy's denial that he received his portion of Decedent's separate property.

In contrast, the trial court found Mr. Raimer's testimony was sincere and truthful. The trial court specifically found Mr. Raimer was very close to Decedent up to his death. The court highlighted Mr. Raimer's testimony that he brought Decedent for cancer treatments and was with Decedent until he died. Notwithstanding their closeness, Decedent never told Mr. Raimer that he had a will wherein Mr. Raimer had been named the executor or discussed the contents of will. Mr. Raimer also testified that Decedent's wife was the most important person in Decedent's life. The trial court described Mr. Raimer's testimony as "independent and not self-serving." The trial court also noted there was no reliable testimony that anyone had discussed Decedent's will with him in nearly ten years.

"Clear and convincing proof that a person other than the testator destroyed the will without the direction, consent or permission of the testator would be sufficient to overcome the presumption that the testator revoked the will by destroying it." *In re Succession of Doucet*, 42,963, p. 7 (La. App. 2 Cir. 2/6/08), 975 So.2d 738, 741. Upon reviewing all the testimony herein, the trial court concluded there was no evidence or testimony to support that Decedent did not

destroy the 2004 will other than the "self-serving testimony regarding alleged conversations Decedent had with his siblings about his wishes upon his death."

Under the manifest error standard of review, it is not within the purview of an appellate court to disturb a trial court's credibility determinations and reasonable inferences even though the appellate court may feel its own evaluation and inferences are as reasonable and it may have weighed the evidence differently. *See Rossell v. ESCO*, 549 So.2d at 844. *Rossell* discusses the deference accorded a trial court's credibility determinations as follows:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Id.* (citations omitted). *Rossell* also reiterates the established precept that where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly wrong. *Id.* (citations omitted). *Rossell* stressed that appellate courts must constantly have in mind that their initial review function is not to conduct a *de novo* review of the factual issues. *Id.* (citations omitted).

In *Doucette*, the Second Circuit court could not detect any manifest error and proceeded to confirm the trial court's finding that the evidence did not show one way or the other what happened to the decedent's original will. 42,963, p. 6, 975 So.2d at 742. In a related matter, *Succession of Messina*, 22-172, pp. 3-4 (La. App. 5 Cir. 11/30/22), 353 So.3d 1009, 1012, the daughter of the testator argued that she had rebutted the presumption of revocation where there was no direct evidence that the testator intended to revoke his olographic will; a copy of the will was found in his office after he suffered a stroke; three witnesses testified that the testator verbally expressed his intent to leave everything to the daughter; and there was no

evidence of any other testament. Nevertheless, the *Messina* Court noted that the trial court had made credibility determinations and held that it could not say that the trial court was manifestly erroneous in finding that the daughter failed to show by "clear proof" that the testator did not revoke his will. 22-172, pp. 9-10, 353 So.3d at 10155-16. Likewise, we reach a similar result as found in *Doucette*, *supra* and *Messina*, *supra*. Although Appellants argue that a reasonable view of the evidence compels a different outcome, this Court cannot say that the trial court's finding was clearly wrong in determining that Appellants did not offer clear and convincing proof to rebut the presumption of revocation. Consequently, Appellants' assignment of error is not meritorious.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment.


**AFFIRMED**